ORIGINAL

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cr. No. 14- 10283 |
| | ) | |
| 1.  ANTHONY SPAGNOLO, | ) | VIOLATION: |
|     a/k/a "Spucky", | ) | |
|     a/k/a "Crazy Eyes", and | ) | 18 U.S.C. § 1951 |
| 2.  PRYCE QUINTINA, | ) | (Conspiracy to Interfere with Commerce by |
|     a/k/a "Stretch", | ) | Extortion) |
| | ) | |
|     Defendants. | ) | 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461 |
| | ) | (Criminal Forfeiture) |

## INDICTMENT

The Grand Jury charges that:

COUNT ONE:          (18 U.S.C. § 1951 – Conspiracy to Interfere with Commerce by Extortion)

1.     At all times relevant to this Indictment:

a.     Defendant Anthony Spagnolo, a/k/a "Spucky", a/k/a "Crazy Eyes", lived in Revere, Massachusetts.   Spagnolo was the acting boss of the New England Family of La Cosa Nostra ("NELCN" or "the Mafia").   The NELCN was a criminal organization operating in Massachusetts and elsewhere, the activities of which included extortion by implied threats of force, violence, and fear, including fear of economic loss.

b.     Defendant Pryce Quintina, a/k/a "Stretch", also resided in Revere. Quintina was a "made" member of the NELCN who reported to Spagnolo.

c.     Constitution Vending Company ("Constitution") was a Revere business that leased video poker machines (the "Machines") to social clubs and bars in Revere and East Boston, Massachusetts.   Constitution and its customers operated the Machines in violation of Massachusetts and federal law by permitting the Machines to be used for illegal gambling.

1

Constitution split the cash proceeds from the Machines equally with the bars and social clubs that hosted the Machines.   Constitution was engaged in interstate commerce.

d.      Beginning in or about February 2004, Victim 1 owned and controlled Constitution.

e.      Victim 2 was an official with the Revere Moose Lodge, a social club that hosted Constitution's Machines between the early 1990s and in or about February 2013.   The Revere Moose Lodge was engaged in interstate commerce.

f.      Victim 3 owned video poker machines that Victim 3 wanted to lease to the Revere Moose Lodge in exchange for a percentage of the illegal proceeds that those machines would generate.

*The Protection Payments*

2.      For approximately 10 years before February 2004, Constitution made regular monthly payments to a senior member of the NELCN ("Member 1") based on Member 1's demand that Constitution make these payments to protect the business, i.e., to ensure that Constitution's Machines remained in its customers' businesses, including the Revere Moose Lodge, and were not replaced with video poker machines owned by other vendors.   Member 1 was not entitled to these payments.

3.      After assuming control of Constitution in or about February 2004, Victim 1 continued Constitution's practice of making payments to members of the NELCN to protect Constitution's business.   Victim 1 understood and was afraid that if Constitution did not continue to make these protection payments, the NELCN would force Constitution to remove its Machines from the bars and social clubs that hosted them and permit other vendors to install their own video poker machines.

4.      Beginning at least as early as October 2005, defendant Anthony Spagnolo directed

2

defendant Pryce Quintina to collect monthly payments from Constitution in exchange for protecting Constitution's business

5.      Neither defendant Anthony Spagnolo nor defendant Pryce Quintina was entitled to receive payment from Constitution.

6.      Defendant Pryce Quintina collected monthly cash payments from Constitution representatives and regularly took those payments to defendant Anthony Spagnolo.

7.      Between in or about October 2005 and in or about October 2012, defendants Pryce Quintina and Anthony Spagnolo demanded and received at least $50,000 in payments from Constitution.

*The Protection – the Revere Moose Lodge*

8.      In or about November 2012, Victim 2 and Victim 3 planned to install in the Revere Moose Lodge video poker machines that Victim 3 owned.   Victim 3 agreed to split the revenues from these machines on terms more favorable to the Revere Moose Lodge than Constitution's agreement with the Revere Moose Lodge.

9.      On or before November 10, 2012, defendant Anthony Spagnolo learned of Victim 2 and Victim 3's plan to replace Constitution's Machines at the Revere Moose Lodge.

10.      On or about November 10, 2012, defendant Anthony Spagnolo called Victim 2 and demanded to see him.

11.      On or about November 12, 2012, defendant Anthony Spagnolo and defendant Pryce Quintina met with Victim 2 in Revere.

12.      On or about November 12, 2012, defendant Anthony Spagnolo threatened Victim 2 that he would not permit Victim 2 and Victim 3 to remove Constitution's Machines from the Revere Moose Lodge.

3

13.     As a result of defendant Anthony Spagnolo's meeting with and threats to Victim 2,

Victim 3 did not install video poker machines at the Revere Moose Lodge.

14.     From at least as early as October 2005 until in or about November 2012, in the

District of Massachusetts and elsewhere,

> 1.  ANTHONY SPAGNOLO,
>     a/k/a "Spucky",
>     a/k/a "Crazy Eyes", and
> 2.  PRYCE QUINTINA,
>     a/k/a "Stretch"

the defendants herein, did combine, conspire, confederate and agree with persons known and

unknown to the Grand Jury to obstruct, delay, and affect commerce and the movement of articles

and commodities in commerce, by extortion, as the terms "extortion" and "commerce" are defined

in Title 18, United States Code, Section 1951(b)(2) and (b)(3), in that the defendants conspired to

obtain the property of another person, namely United States currency, with that person's consent,

induced by the wrongful use of actual and threatened force, violence, and fear, including fear of

economic loss.

All in violation of Title 18, United States Code, Section 1951.

## FORFEITURE ALLEGATIONS

15.     Upon conviction of the offense alleged in Count 1 of this Indictment, the

defendants,

1.  ANTHONY SPAGNOLO,
a/k/a "Spucky",
a/k/a "Crazy Eyes", and
2.  PRYCE QUINTINA,
a/k/a "Stretch"

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal,

which constitutes or is derived from proceeds traceable to the violation.

16.     If any of the property described above in paragraph 15, as a result of any act or

omission of the defendants,

a.      cannot be located upon the exercise of due diligence;

b.  .   has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without
        difficulty,

it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other

property of the defendants up to the value of the property described in subparagraphs a. through e.

of this paragraph.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c).

5

A TRUE BILL,

_____
FOREPERSON OF THE GRAND JURY

_____
SETH B. KOSTO
TIMOTHY E. MORAN
ASSISTANT U.S. ATTORNEYS

DISTRICT OF MASSACHUSETTS

October 1, 2014

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk

3:21

6